Masaki Yamashita
3-5-7 Miyanishi, 2F
Matsuyama, Ehime 790-0065
Japan
Telephone: +81-70-8554-6277
Email: buddha2434fan@gmail.com
Defendant Pro Se

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| COVER CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MASAKI YAMASHITA,<br><br>Defendant. | **Case No. 3:26-cv-01117-JD**<br><br>**DEFENDANT MASAKI YAMASHITA'S MOTION TO DISMISS ON FORUM NON CONVENIENS GROUNDS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: October 15, 2026<br>Time: 11:00 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 15, 2026, at 11:00 a.m., or at such other date and time as the Court may order, Defendant Masaki Yamashita, appearing pro se, will move the Court to dismiss this action under the doctrine of forum non conveniens.

Defendant respectfully requests dismissal without prejudice in favor of an appropriate forum in Japan. Japan is an available and adequate alternative forum, and the balance of the relevant private- and public-interest factors strongly favors adjudication there.

Defendant does not ask the Court through this motion to adjudicate the merits of Plaintiff's copyright claims.

**TABLE OF CONTENTS**


I. ISSUES TO BE DECIDED 1

II. INTRODUCTION 1

III. RELEVANT FACTS 3

A. Both Principal Parties Are Located in Japan, and Defendant's Relevant Conduct Occurred There. 3

B. The Complaint and Exhibit B Do Not Correspond Cleanly to the Underlying Japanese-Language Videos and YouTube Records. 4

1. Plaintiff alleges that twenty characters are at issue, while Defendant's records of the 56 counter-notified videos identify sixteen asserted copyrighted characters. 4

2. Exhibit B No. 48 illustrates a concrete discrepancy concerning the identity of the allegedly infringed character. 5

3. Plaintiff's own titles show that many of the videos concern criticism and controversies involving Plaintiff and its affiliated performers. 5

4. Exhibit B also contains a concrete English transliteration discrepancy. 6

C. Defendant Received 56 Separate Restoration Notifications for 56 Unique Videos. 7

D. The DMCA Counter-Notification Procedure Does Not Make California the Required Forum. 7

IV. LEGAL STANDARD 8

## TABLE OF CONTENTS (continued)

V. ARGUMENT 10
A. Japan Is an Available and Adequate Alternative Forum. 10
B. The Private-Interest Factors Strongly Favor Japan. 11
1. Both principal parties are located in Japan. 11
2. Defendant's allegedly infringing conduct occurred in Japan. 11
3. The principal factual materials are Japanese-language materials. 12
4. Potential nonparty witnesses and contextual evidence are substantially connected to Japan. 12
5. The digital nature of much of the evidence reduces, but does not eliminate, the comparative burden. 13
6. Defendant's language burden is a legitimate practical consideration. 13
C. The Public-Interest Factors Also Favor Japan. 14
1. Japan has a substantial localized interest in this dispute. 14
2. The Court's familiarity with United States copyright law weighs toward retention, but is not dispositive. 14
3. Translation and factfinder burdens favor Japan. 15
4. Court congestion should be treated as neutral. 15
D. Defendant's DMCA Jurisdictional Consent Does Not Foreclose Forum Non Conveniens. 15
E. This Motion Does Not Seek a Merits Determination and Does Not Waive Defendant's Other Defenses or Rights. 16
VI. CONCLUSION 17

# TABLE OF AUTHORITIES

**CASES**


| | |
|---|---|
| Boston Telecommunications Group, Inc. v. Wood, 588 F.3d 1201 (9th Cir. 2009) | 8, 9 |
| Creative Technology, Ltd. v. Aztech System Pte., Ltd., 61 F.3d 696 (9th Cir. 1995) | 2, 8, 11, 14 |
| Lockman Foundation v. Evangelical Alliance Mission, 930 F.2d 764 (9th Cir. 1991) | 2, 8, 10, 14 |
| Lueck v. Sundstrand Corp., 236 F.3d 1137 (9th Cir. 2001) | 8, 9, 10 |
| Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981) | 8, 9, 10 |
| Sinochem International Co. v. Malaysia International Shipping Corp., 549 U.S. 422 (2007) | 16 |
| Nexon Korea Corp. v. Ironmace Co., Ltd., No. 23-35600, 2024 WL 3493002 (9th Cir. July 22, 2024) | 8, 15, 16 |
| Cordova v. Huneault, No. 25-cv-04685-VKD, Dkt. 117 (N.D. Cal. Apr. 20, 2026) | 8, 16 |


**STATUTES**


| | |
|---|---|
| 17 U.S.C. § 512(g)(3)(D) | 1, 8, 15 |
| Copyright Act of Japan, Act No. 48 of 1970, arts. 112, 114 | 10 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. ISSUES TO BE DECIDED

1. Whether Japan is an available and adequate alternative forum for this dispute between a Japanese corporation headquartered in Tokyo and an individual residing in Japan.

2. Whether the relevant private- and public-interest factors strongly favor adjudication in Japan, where Defendant resides, where the challenged Japanese-language videos were created and uploaded, and where the principal factual context is located.

3. Whether Defendant's consent to personal jurisdiction under 17 U.S.C. § 512(g)(3)(D) precludes dismissal on forum non conveniens grounds.

## II. INTRODUCTION

This action is a dispute between two parties located in Japan concerning Japanese-language videos created and uploaded by Defendant from Japan.

Plaintiff COVER Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan. Compl. ¶ 1. Defendant Masaki Yamashita is an individual residing in Matsuyama, Ehime, Japan. Id. ¶ 2.

The videos at issue consist of Japanese-language commentary and reporting concerning the Virtual YouTuber ("VTuber") industry. Many concern criticism, controversies, and other matters involving Plaintiff, its affiliated performers, or its business activities. Defendant researched, scripted, edited, narrated, and uploaded the videos while physically located in Japan. Their source materials and factual context are predominantly Japanese.

The procedural path that brought this Japan-centered dispute to this Court is also relevant. Plaintiff alleges that it submitted 68 copyright violation claims, described as takedown notices, to YouTube. Compl. ¶ 16. Plaintiff further alleges that Defendant submitted counter-notifications, after which Google/YouTube required Plaintiff to provide evidence of legal action if Plaintiff wished to prevent restoration of the affected content. Id. ¶¶ 16–17. Plaintiff states that "[a]ccordingly," it brought this copyright action. Id. ¶ 17.

That procedural history does not determine whether Plaintiff's copyright claims are meritorious, and Defendant does not ask the Court on this motion to determine Plaintiff's motive for filing suit. It does explain why a dispute centered on two Japanese parties, Japanese-language expression, Japanese individuals, and Japan-centered events is presently before a federal court in California.

The underlying records also do not correspond cleanly to the simplified English-language description contained in the Complaint and Exhibit B. Plaintiff identifies 68 videos and alleges that twenty specific avatar characters are at issue. Compl. ¶¶ 10, 14; Ex. B. Defendant's records show that 56 videos proceeded through the DMCA counter-notification and restoration process, while twelve additional Exhibit B entries did not correspond to that sequence. Defendant's records of those 56 videos identify sixteen—not twenty—characters as the copyrighted characters asserted in the corresponding YouTube records. There are also specific discrepancies between Plaintiff's Exhibit B and the underlying platform records concerning which character was identified as the allegedly infringed work.

These discrepancies are not presented to obtain a merits ruling. They demonstrate that adjudication of this controversy will require individualized examination of Japanese-language videos, Japanese names and characters, and the underlying platform records.

The United States has meaningful connections to this action. Plaintiff relies on United States copyright registrations and invoked the DMCA procedures of an American online platform. Defendant does not minimize those connections. But they do not make a United States forum mandatory.

The Ninth Circuit has held that forum non conveniens applies to claims under the United States Copyright Act. Creative Technology, Ltd. v. Aztech System Pte., Ltd., 61 F.3d 696, 700–04 (9th Cir. 1995). It has also specifically affirmed forum non conveniens dismissal in favor of Japan in a dispute substantially involving copyright issues. Lockman Foundation v. Evangelical Alliance Mission, 930 F.2d 764, 767–72 (9th Cir. 1991).

Both principal parties are in Japan. Defendant's allegedly infringing conduct occurred there. The expression at issue is in Japanese. The principal factual context is Japanese. And potential nonparty witnesses or contextual evidence arising from the persons and events discussed in the videos are far more closely connected to Japan than to California.

The private- and public-interest factors therefore strongly favor Japan, and this action should be dismissed without prejudice.

## III. RELEVANT FACTS

### A. Both Principal Parties Are Located in Japan, and Defendant's Relevant Conduct Occurred There.

Plaintiff alleges that it is a corporation organized under the laws of Japan with its principal place of business in Tokyo, Japan. Compl. ¶ 1. Plaintiff alleges that Defendant resides in Matsuyama City, Ehime Prefecture, Japan. Id. ¶ 2.

Defendant is primarily Japanese-speaking. Yamashita Decl. ¶ 3. He does not maintain an office, employees, or a physical business presence in California or elsewhere in the United States. Id. ¶ 4.

Since approximately 2019, Defendant has independently produced Japanese-language commentary and reporting concerning the VTuber industry. Id. ¶ 5.

The videos at issue in this action were researched, scripted, edited, narrated, and uploaded by Defendant while he was physically located in Japan. Id. ¶ 6. The principal materials in Defendant's possession concerning the videos are also principally Japanese-language materials. Id.

Plaintiff alleges that it has engaged in business and promotional activities in the United States, including California. Compl. ¶ 8. Defendant does not dispute those allegations for purposes of this motion. Those corporate activities, however, do not change where Defendant created and uploaded the challenged videos or the predominantly Japanese character of the underlying factual record.

**B. The Complaint and Exhibit B Do Not Correspond Cleanly to the Underlying Japanese-Language Videos and YouTube Records.**

Plaintiff's Exhibit B identifies 68 YouTube videos and expressly describes its English-language titles as "Reference translation[s] of the original Japanese language titles." Compl., Ex. B, Dkt. 1-2.

Defendant personally reviewed those 68 entries against his YouTube and email records. Yamashita Decl. ¶¶ 7–12 & Ex. A.

Defendant's records account for the 68 entries as follows: 56 distinct videos correspond to videos for which Defendant submitted DMCA counter-notifications and later received separate restoration notifications from YouTube. Id. ¶¶ 8–12 & Ex. A.

For twelve additional entries, Defendant did not identify in his records a corresponding removal, counter-notification, and restoration sequence. Id. ¶ 12 & Ex. A.

Defendant does not ask the Court on this motion to determine the ultimate legal significance of that distinction. It demonstrates, however, that the dispute cannot be evaluated merely by treating all 68 entries in Plaintiff's English-language chart as having followed the same platform history.

**1. Plaintiff alleges that twenty characters are at issue, while Defendant's records of the 56 counter-notified videos identify sixteen asserted copyrighted characters.**

Plaintiff alleges that "[a]t issue in this action are 20 specific avatar characters." Compl. ¶ 10. Defendant's records of the 56 videos that proceeded through the counter-notification and restoration process identify sixteen distinct characters as the copyrighted characters asserted in the corresponding YouTube records. Yamashita Decl. ¶ 13 & Ex. A.

The four additional characters identified in Complaint ¶ 10—AZKi, Kiryu Coco, Houshou Marine, and Hoshimachi Suisei—do not appear as the asserted copyrighted characters in Defendant's records of those 56 counter-notified videos.

This statement concerns only the identity of the asserted copyrighted character in the relevant YouTube records. Some of those names may appear in video titles or as persons discussed in particular videos. Defendant does not suggest otherwise.

The distinction is relevant because Plaintiff's characterization of the scope of the action does not correspond exactly to the platform records underlying the 56 counter-notifications.

**2. Exhibit B No. 48 illustrates a concrete discrepancy concerning the identity of the allegedly infringed character.**

Plaintiff's Exhibit B No. 48 concerns YouTube video EGMIN96IYQ0.

Plaintiff gives the title as:

> Kiryu Coco: "I respect the 0th Generation members. Except for Sakura Miko-senpai." ← Is this a confirmation?
> [Mikochi/Factions/Hololive/Cover Inc./VTubers]

In the column labeled "COPYRIGHT INFRINGED," Plaintiff identifies the copyrighted character as Kiryu Coco. Compl., Ex. B No. 48.

The YouTube copyright-removal notification received by Defendant for that same video ID, however, identifies the "content used" as:

> ホロライブプロダクション さくらみこ
> ("Hololive Production Sakura Miko")

Yamashita Decl. ¶ 14 & Ex. C.

Defendant does not ask the Court on this motion to decide which designation is correct or whether the discrepancy ultimately affects the merits of Plaintiff's copyright claim.

The point is narrower. Plaintiff's litigation chart and the underlying platform record for the same video identify different characters in connection with the asserted copyright claim.

This is a concrete example of why the claims will require individualized comparison of the Japanese-language videos and the underlying records.

**3. Plaintiff's own titles show that many of the videos concern criticism and controversies involving Plaintiff and its affiliated performers.**

The nature of the underlying expression is apparent from Plaintiff's own English reference translations.

For example, Plaintiff describes Exhibit B No. 12 as:

> Akaichan Exposes Bullying Within Hololive!? "Bullying Young Kids Is Just So Much Fun, Isn't It?"
> [Haachama/Hololive/Cover Inc./VTuber]

Compl., Ex. B No. 12.

Plaintiff describes Exhibit B No. 57 as:

> Sakura Miko violates terms of service by reading paid horse racing program information, causing controversy...
> [Mikochi/Green Channel/Hololive/Cover Inc./VTuber]

Compl., Ex. B No. 57.

According to Defendant's records, both are among the twelve Exhibit B entries for which Defendant did not identify a corresponding removal, counter-notification, and restoration sequence. Yamashita Decl. ¶ 12 & Ex. A.

Defendant cites these titles solely to identify the subject matter and context of the expression involved in this action.

He does not ask the Court on this motion to determine whether the statements in those videos were true, whether those videos infringed Plaintiff's copyrights, whether Plaintiff acted improperly in identifying them in Exhibit B, or whether Plaintiff filed this lawsuit for an improper purpose.

**4. Exhibit B also contains a concrete English transliteration discrepancy.**

Exhibit B No. 63 describes another Japanese-language video concerning Plaintiff's President and CEO.

Plaintiff's English reference translation gives the full title as:

> President YAGOO's old tweet saying "If I'm going to date anyone, it's Miko-chan!" gets unearthed
> [Motoaki Yagou/Sakura Miko/Mikochi/Hololive/Cover Inc./VTuber]

Compl., Ex. B No. 63.

Plaintiff's own English-language corporate website, however, identifies its CEO as:

> Motoaki Tanigo

Yamashita Decl. ¶ 15 & Ex. D.

Defendant does not offer this discrepancy as an attack on Plaintiff's credibility or as a basis for resolving the merits.

It is a concrete example of the translation, transliteration, and identification issues that arise when Japanese-language source materials concerning Japanese individuals are converted into English-language litigation materials.

Taken together, the 68-versus-56 platform-history distinction, the twenty-versus-sixteen character distinction, the inconsistent character identification for Exhibit B No. 48, and the transliteration issue in Exhibit B No. 63 demonstrate that the underlying Japanese-language records must be examined individually and in context.

**C. Defendant Received 56 Separate Restoration Notifications for 56 Unique Videos.**

For the 56 videos identified in Defendant's records as having proceeded through the counter-notification process, Defendant received 56 separate restoration notifications from YouTube Copyright corresponding to 56 unique YouTube video IDs. Yamashita Decl. ¶¶ 8–11. Each notice states that YouTube had completed processing the counter-notification pursuant to the Digital Millennium Copyright Act and that the specified video had been restored, unless Defendant had deleted the video himself. Id. ¶ 9 & Exs. B-1–B-4.

The final restoration notice among those records was dated February 19, 2026, and concerned YouTube video ID IQ17FLC_S30. Id. ¶ 11.

Defendant does not offer those administrative notices as a judicial determination that the restored videos were noninfringing.

They are offered principally to document the actual scope of the counter-notification and restoration process from which this litigation arose.

**D. The DMCA Counter-Notification Procedure Does Not Make California the Required Forum.**

Plaintiff alleges that Defendant consented to personal jurisdiction in this District. Compl. ¶ 5. Plaintiff further alleges that Defendant's counter-notifications caused Google/YouTube to require evidence of legal action if Plaintiff wished to prevent restoration of the affected content. Compl. ¶¶ 16–17.

Section 512(g)(3)(D) requires a subscriber residing outside the United States who submits a counter-notification to consent to the jurisdiction of the federal district court for the judicial district in which the service provider may be found.

That statutory consent is consent to personal jurisdiction. It is not a mandatory forum-selection provision and does not eliminate forum non conveniens.

In Nexon Korea Corp. v. Ironmace Co., Ltd., No. 23-35600, 2024 WL 3493002, at *2 (9th Cir. July 22, 2024) (unpublished), the Ninth Circuit held that a subscriber submitting a DMCA counter-notification "consents only to personal jurisdiction." It further concluded that § 512(g)(3)(D) does not categorically preclude forum non conveniens.

Defendant relies on Nexon Korea only for that narrow proposition.

A recent decision in this District confirms the limited scope of Nexon Korea. Cordova v. Huneault, No. 25-cv-04685-VKD, Dkt. 117 at 12–13 (N.D. Cal. Apr. 20, 2026), explained that Nexon Korea establishes that consent to personal jurisdiction in a DMCA counter-notice does not waive an objection based on forum non conveniens.

Cordova also distinguished Nexon Korea because that case included circumstances not present here, including a Korean forum-selection clause and parallel Korean litigation.

Defendant therefore does not argue that Nexon Korea dictates the result of the factor analysis here.

There is no parallel Japanese action and no contractual Japanese forum-selection clause in this case.

Dismissal instead turns on the facts of this case and the ordinary forum non conveniens analysis under Lockman, Creative Technology, Lueck, Piper, and related authority.

## IV. LEGAL STANDARD

Forum non conveniens is an exceptional doctrine to be employed sparingly. A defendant seeking dismissal must make a clear factual showing that litigating in the plaintiff's chosen forum would impose oppression and vexation out of proportion to the plaintiff's convenience. Boston Telecommunications Group, Inc. v. Wood, 588 F.3d 1201, 1212 (9th Cir. 2009).

The doctrine does not require a plaintiff to select the theoretically most convenient forum. Id.

The moving party must establish two principal requirements:

1. the existence of an adequate alternative forum; and
2. that the balance of relevant private- and public-interest factors favors dismissal.

Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142–43 (9th Cir. 2001); Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981).

Defendant bears the burden on both requirements. Lueck, 236 F.3d at 1143.

An alternative forum ordinarily is available when the defendant is amenable to service of process there. Piper, 454 U.S. at 254 n.22.

An alternative forum is adequate unless the remedy it offers is so clearly inadequate or unsatisfactory that it effectively provides no remedy for the subject matter of the dispute. Id. at 254.

Plaintiff's choice of forum is entitled to deference. The degree of deference, however, is reduced when a foreign plaintiff selects a forum outside its home country because the normal assumption that the selected forum is convenient is less compelling. Piper, 454 U.S. at 255–56; Lueck, 236 F.3d at 1143–45.

Less deference does not mean no deference. Defendant recognizes that ordinarily a plaintiff's chosen forum should not be disturbed unless the private- and public-interest factors strongly favor trial in a foreign country. Lueck, 236 F.3d at 1145; Boston Telecommunications, 588 F.3d at 1212.

Here, Plaintiff is a Japanese corporation headquartered in Japan. California is not Plaintiff's home forum.

Relevant private-interest factors include:

1. the residence of the parties and witnesses; 2. the forum's convenience to the litigants; 3. access to physical evidence and other sources of proof; 4. whether unwilling witnesses may be compelled to testify; 5. the cost of bringing witnesses to trial; 6. enforceability of a judgment; and 7. other practical problems affecting the ease, speed, and expense of trial.

Lueck, 236 F.3d at 1145.

Relevant public-interest factors include:

1. the local interest in the controversy; 2. the Court's familiarity with governing law; 3. the burden on local courts and juries; 4. court congestion; and 5. the costs and practical difficulties associated with resolving a dispute having limited factual connection to the forum.

Id. at 1147.

## V. ARGUMENT

### A. Japan Is an Available and Adequate Alternative Forum.

Japan is an available alternative forum.

Defendant resides in Matsuyama, Ehime, Japan. Plaintiff is a Japanese corporation headquartered in Tokyo. Compl. ¶¶ 1–2; Yamashita Decl. ¶ 2.

In Lockman, the Ninth Circuit found the availability requirement satisfied where defendants resided in Japan or submitted to Japanese jurisdiction. 930 F.2d at 768.

Here, Defendant himself resides in Japan. There is no practical basis to conclude that an action against a Japanese resident by a Japanese corporation cannot be brought before an appropriate Japanese court.

Japan is also an adequate alternative forum.

The Ninth Circuit specifically upheld the adequacy of Japan in Lockman. Id. at 768–70. The court rejected the proposition that differences between Japanese and American law or procedure made Japan inadequate.

Japan also provides meaningful remedies for copyright infringement. Article 112 of the Copyright Act of Japan authorizes a copyright owner to seek cessation or prevention of infringement and related relief. Article 114 provides rules for determining damages arising from copyright infringement. Copyright Act of Japan, Act No. 48 of 1970, arts. 112, 114.

An alternative forum need not provide the identical cause of action, procedure, or range of remedies available in the United States. Piper, 454 U.S. at 247, 254 & n.22; Lockman, 930 F.2d at 768–69.

Creative Technology is particularly instructive. There, the Ninth Circuit affirmed forum non conveniens dismissal of an action asserting infringement under the United States Copyright Act and rejected the argument that the federal character of the copyright claim categorically required adjudication in a United States federal court. 61 F.3d at 700–04.

Consequently, Japan provides Plaintiff with a meaningful avenue for adjudicating alleged copyright infringement and qualifies as an available and adequate alternative forum.

If the Court concludes that a specific condition relating to the availability of the Japanese forum is necessary, Defendant respectfully requests an opportunity to address such a condition rather than denial of the motion solely on that basis.

**B. The Private-Interest Factors Strongly Favor Japan.**

**1. Both principal parties are located in Japan.**

Plaintiff's principal place of business is in Tokyo, Japan. Defendant resides in Matsuyama, Japan. Plaintiff therefore is not a domestic plaintiff seeking to litigate in its home forum. Both principal parties to this dispute are based in Japan.

Proceeding in California requires two Japanese parties to litigate through a foreign judicial system thousands of miles from where each is principally located.

This factor favors Japan.

**2. Defendant's allegedly infringing conduct occurred in Japan.**

Defendant researched, scripted, edited, narrated, and uploaded the challenged videos while physically located in Japan. Yamashita Decl. ¶ 6.

The creation and uploading activities attributed to Defendant therefore did not occur in California.

The fact that the videos were uploaded to an American platform and may have been accessible internationally does not change where Defendant undertook the allegedly infringing acts of preparing and uploading the videos.

This factor favors Japan.

### 3. The principal factual materials are Japanese-language materials.

The challenged videos are in Japanese.

Defendant's scripts and principal source materials in his possession are principally in Japanese.

Plaintiff's own Exhibit B acknowledges that its English-language video titles are "Reference translation[s] of the original Japanese language titles."

Many of the underlying statements, persons, names, events, and corporate matters are Japanese.

The record already contains concrete examples of the resulting difficulties.

For the same video, Exhibit B No. 48 identifies Kiryu Coco in the "COPYRIGHT INFRINGED" column while the underlying YouTube removal notification identifies the content used as Sakura Miko.

Exhibit B No. 63 renders Plaintiff's own CEO's name as "Motoaki Yagou," while Plaintiff's official English-language corporate website identifies him as "Motoaki Tanigo."

These are not merely hypothetical concerns about possible translation or identification problems. They are discrepancies already present in the records relevant to this action.

A Japanese forum can examine the principal materials in their original language and context.

This factor strongly favors Japan.

### 4. Potential nonparty witnesses and contextual evidence are substantially connected to Japan.

The videos concern Plaintiff, its affiliated performers, Japanese-language statements, and events concerning the Japanese VTuber industry.

To the extent testimony from Plaintiff's performers, employees, management personnel, or other persons discussed in those videos becomes material, those potential witnesses and the relevant events are principally connected to Japan.

Defendant does not assert at this stage that every individual mentioned in a video necessarily will become a witness.

The narrower point is that the likely source of nonparty testimony and contextual evidence arising from the subject matter of the videos is overwhelmingly Japan, not California.

Obtaining testimony or compulsory process from nonparty witnesses located in Japan may be more difficult in this Court than in an appropriate Japanese forum.

This factor favors Japan.

**5. The digital nature of much of the evidence reduces, but does not eliminate, the comparative burden.**

Defendant recognizes that the videos, emails, and many associated records are digital and can be transmitted electronically.

The transportation of physical documents therefore should not receive substantial weight.

But electronic transmission does not resolve the need to interpret Japanese-language speech, authenticate Japanese materials, address Japanese names and identities, or obtain evidence from persons located in Japan.

The 68-versus-56 platform-history distinction, the twenty-versus-sixteen character distinction, and the specific inconsistencies between Plaintiff's litigation chart and the underlying platform records demonstrate why the practical inquiry is not simply one of electronically transmitting files from one country to another.

This factor favors Japan.

**6. Defendant's language burden is a legitimate practical consideration.**

Defendant is primarily Japanese-speaking and appears pro se without United States counsel. Yamashita Decl. ¶¶ 1, 3.

Litigating a federal copyright action in California requires Defendant to understand and prepare English-language pleadings, legal authorities, discovery materials, evidentiary submissions, and potentially testimony.

Defendant does not contend that this circumstance alone warrants dismissal.

It is one practical consideration, taken together with the residence of the parties, location of the conduct, language of the evidence, and location of potential witnesses, demonstrating the comparative convenience of Japan.

Taken together, the private-interest factors strongly favor Japan.

### C. The Public-Interest Factors Also Favor Japan.

#### 1. Japan has a substantial localized interest in this dispute.

This controversy is between a Japanese corporation headquartered in Tokyo and a Japanese individual residing in Matsuyama.

The allegedly infringing expression was created in Japan, in Japanese.

The challenged videos principally concern a Japanese entertainment company, its affiliated performers, its activities, and controversies discussed through Japanese-language sources.

Japan therefore has a direct and substantial localized interest in the controversy.

The United States also has a legitimate interest. Plaintiff asserts United States copyright registrations and used the DMCA process of an American service provider.

Defendant does not contend that the American interest is nonexistent.

But California's connection to the underlying factual controversy is substantially less concentrated than Japan's. Plaintiff's own alleged business contacts with California do not alter the Japanese location of Defendant, the relevant conduct, the expression, and the principal factual context.

This factor favors Japan.

#### 2. The Court's familiarity with United States copyright law weighs toward retention, but is not dispositive.

Plaintiff asserts a cause of action under the United States Copyright Act.

This Court is naturally more familiar with that law than a Japanese court, and Defendant acknowledges that this consideration favors retention to some degree.

It is not dispositive.

Creative Technology expressly held that a United States Copyright Act claim remains subject to forum non conveniens analysis. 61 F.3d at 700–04.

Similarly, Lockman affirmed dismissal in favor of Japan in a dispute in which copyright issues formed an important part of the controversy. 930 F.2d at 768–72.

Consequently, the governing-law consideration weighs in the balance but does not require this action to remain in California.

**3. Translation and factfinder burdens favor Japan.**

If this action proceeds toward trial in California, substantial portions of the factual record will require translation from Japanese.

The factfinder may be required to evaluate Japanese-language video content, titles, source materials, names, and contextual evidence through English translations.

The discrepancies already present in Plaintiff's Exhibit B and the underlying platform records illustrate the practical reality of that burden.

A Japanese court would be able to address much of the core factual record in its original language.

This factor favors Japan.

**4. Court congestion should be treated as neutral.**

Defendant does not rely on generalized assertions regarding comparative docket congestion.

He therefore treats that factor as neutral.

On balance, the public-interest factors favor Japan.

**D. Defendant's DMCA Jurisdictional Consent Does Not Foreclose Forum Non Conveniens.**

Plaintiff alleges that Defendant consented to personal jurisdiction in this District through the DMCA counter-notification procedure. Compl. ¶ 5.

Defendant does not ask the Court through this motion to determine otherwise.

But personal jurisdiction and forum non conveniens answer different questions.

In Nexon Korea, the Ninth Circuit considered § 512(g)(3)(D) and held that the statutory consent extends to personal jurisdiction, not to an exclusive or mandatory choice of forum. 2024 WL 3493002, at *2.

Thus, the DMCA jurisdictional consent does not categorically bar a forum non conveniens motion.

Defendant acknowledges that Nexon Korea involved materially different facts.

As Cordova recently observed, Nexon Korea involved Korean parties, a forum-selection clause selecting Korea, and parallel litigation in Korea. Cordova, No. 25-cv-04685-VKD, Dkt. 117 at 12–13.

This case has no parallel Japanese proceeding and no contractual Japanese forum-selection clause.

Defendant therefore does not contend that the result in Nexon Korea controls the balancing analysis here.

Instead, the balance rests on the facts established in this record: both principal parties are in Japan; Defendant's conduct occurred in Japan; the relevant expression and factual materials are principally Japanese-language materials; the underlying records require individualized examination; and the persons and events involved are far more closely connected to Japan than to California.

The statutory DMCA consent does not prevent the Court from applying ordinary forum non conveniens principles to those facts.

**E. This Motion Does Not Seek a Merits Determination and Does Not Waive Defendant's Other Defenses or Rights.**

Forum non conveniens is a non-merits basis for declining to exercise jurisdiction in favor of a more appropriate forum. Sinochem International Co. v. Malaysia International Shipping Corp., 549 U.S. 422, 429–32 (2007).

Defendant does not ask the Court through this motion to determine:

- whether any challenged video infringed Plaintiff's copyrights;
- whether Defendant's uses constitute fair use;
- whether copyright misuse applies;
- whether any factual statement or criticism in the videos was true or false;
- whether Plaintiff's copyright-enforcement actions were proper or improper;
- whether Plaintiff filed this action for any improper purpose; or

- whether Defendant may have any separate protection, defense, claim, or remedy relating to protected speech, including any anti-SLAPP right or other speech-related protection that may be available under applicable law.

Defendant has separately asserted defenses in his Amended Answer. Dkt. 19.

Nothing in this motion withdraws, abandons, concedes, or waives those defenses.

Defendant expressly preserves all defenses, claims, remedies, and procedural rights otherwise available to him.

**VI. CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint without prejudice under the doctrine of forum non conveniens in favor of an appropriate forum in Japan.

Defendant further requests such other relief as the Court deems just and proper.

Dated: September 4, 2026

Respectfully submitted,

By: /s/ Masaki Yamashita

Masaki Yamashita, Defendant Pro Se

Address: 3-5-7 Miyanishi, 2F, Matsuyama, Ehime 790-0065, Japan

Telephone: +81-70-8554-6277

Email: buddha2434fan@gmail.com