Gamma Law, P.C.
Duy Thai, SBN 157345
Email: dthai@gammalaw.com
Bruno Tarabichi, SBN 215129
Email: btarabichi@gammalaw.com
One Sansome Street, Suite 1400
San Francisco, California 94104
Telephone: 415.901.0510
Facsimile: 415.422.9962

Attorneys for Plaintiff
COVER Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COVER CORPORATION, a Japanese corporation,<br><br>Plaintiff,<br><br>v.<br><br>MASAKI YAMASHITA, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:26-cv-01117-JD<br><br>**PLAINTIFF COVER CORPORATION'S OPPOSITION TO DEFENDANT YAMASHITA'S MOTION TO DISMISS ON FORUM NON CONVENIENS GROUNDS**<br><br>Date: October 15, 2026<br>Time: 11:00am<br>Courtroom: 11, 19th Floor<br>Judge: Honorable James Donato |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii
STATEMENT OF ISSUES TO BE DECIDED ..... 1
I. INTRODUCTION ..... 1
II. RELEVANT BACKGROUND ..... 2
A. COVER's Business and Intellectual Property Rights ..... 2
B. Defendant's Willful Copyright Infringement on YouTube ..... 3
C. Defendant Invoked this Court's Jurisdiction by Filing YouTube Counter Notifications ..... 5
III. LEGAL STANDARD ..... 5
IV. ARGUMENT ..... 6
A. COVER's Choice of Forum Is Entitled to Deference ..... 6
B. Defendant Has Not Established That Japan Is an Available and Adequate Alternative Forum ..... 8
1. Defendant Has Not Established That He Is Amenable to Service of Process in Japan ..... 8
2. Defendant Has Not Established That Japan Offers a Satisfactory Remedy for Infringement of United States Copyrights on a United States Platform ..... 9
C. The Balance of Private and Public Interest Factors Favors Retention ..... 10
1. The Private Interest Factors Do Not Support Dismissal ..... 10
2. The Public Interest Factors Favor Retention ..... 18
V. CONCLUSION ..... 21

## TABLE OF AUTHORITIES

**Federal Cases**

*Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 66 n.8 (2013) .......................... 19

*Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1206 (9th Cir. 2009) ..... 6, 7, 12, 16

*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) ............ 7, 16

*City of Almaty v. Khrapunov*, 685 F. App'x 634, 635 & n.1 (9th Cir. 2017) ....................... 9

*Cordova v. Huneault*, 2026 U.S. Dist. LEXIS 87017 (N.D. Cal. Apr. 20, 2026) ........ passim

*Creative Technology, Ltd. v. Aztech Systems Pte., Ltd.*, 61 F.3d 696, 701 (9th Cir. 1995) 10

*CYBERsitter, LLC v. People's Republic of China*, 2010 U.S. Dist. LEXIS 128345, *26 (C.D. Cal. Nov. 18, 2010) ........ 16, 21

*Epic Games, Inc. v. Mendes*, 2018 U.S. Dist. LEXIS 98719, *11-12 (N.D. Cal. June 12, 2018) ........ 12

*Eventbrite, Inc. v. Loranger*, 2019 U.S. Dist. LEXIS 237127, at *14 (N.D. Cal. Nov. 19, 2019) ........ 22

*Future Roots, Inc. v. YEAR0001 AB*, 2024 U.S. Dist. LEXIS 211552, *15 (C.D. Cal. Nov. 20, 2024) ........ 10, 21

*Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*, 816 F.3d 1366, 1372 (Fed. Cir. 2016) ........ 10

*Kleiner v. Spinal Kinetics, Inc.*, 2016 U.S. Dist. LEXIS 52492, *10 (N.D. Cal. Apr. 19, 2016) ........ 17

*Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764 (9th Cir. 1991) 10, 11

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001) ................................ 6, 20

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253-54 (1981) ............................................ 6, 7

*Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000) ......................................... 6, 7

*Riot Games, Inc. v. Suga PTE, Ltd.*, 2023 U.S. Dist. LEXIS 190228, *45-46 (C.D. Cal. Sept. 14, 2023) ........ 16, 21

*Seedevice Inc. v. Korean Broadcasting System*, 2025 U.S. Dist. LEXIS 97388, *14 (C.D. Cal. Mar. 21, 2025) ........ 12

*Sinochem*, 549 U.S. at 425, 429–32 ........ 15

*Via Techs., Inc. v. Asus Computer Int'l*, 2015 U.S. Dist. LEXIS 80124, *24 (N.D. Cal. June 18, 2015) ........ 15, 21

**Federal Statutes**

17 U.S.C. § 1201 ........ 20

17 U.S.C. § 411 ........ 11

17 U.S.C. § 504(c) ........ 11

17 U.S.C. § 505 ........ 11

17 U.S.C. § 512 ........ 2, 5, 19, 20

28 U.S.C. § 1404(a) ........ 6

**State Cases**

*Sandisk Corp. v. SK Hynix, Inc.*, 2015 Cal. Super. LEXIS 296, *35 (Super. Ct. Cal. June 30, 2015) ........ 13, 16

**Other Authorities**

Yasuhiro Fujita, Enforcing Judgments in Japan, Los Angeles Lawyer, Dec. 2004, at 22 (available at 27-DEC LALAW 19) ........ 18

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Defendant has carried his heavy burden of establishing that Japan is an available and adequate alternative forum, where he never states that he is amenable to service of process in Japan, never identifies the Japanese court in which this dispute would be heard, and submits no evidence of Japanese law showing that Japan affords a remedy for infringement of United States copyright registrations occurring on a United States platform.

2. Whether Defendant has carried his heavy burden of establishing that the private and public interest factors clearly point toward dismissal, where the principal non-party custodian of evidence is headquartered in this District, Defendant identifies no witness by name or subject matter and no witness as unwilling, and Defendant concedes that this Court's familiarity with the governing law favors retention.

## I. INTRODUCTION

This is an egregious case of willful copyright infringement in the United States by Defendant Masaki Yamashita, who now seeks to avoid the consequences of his actions in this Court by trying to force Plaintiff COVER Corporation ("COVER") to re-file this case in Japan. Defendant Masaki Yamashita asks this Court to take the exceptional step of dismissing a properly filed federal copyright action in favor of a foreign forum. He cannot carry the heavy burden his request requires. Defendant never states that he is amenable to service of process in Japan. He never identifies the Japanese court that would hear this dispute. He submits no evidence of Japanese law. He names no witness, describes no witness's testimony, and identifies no witness as unwilling. On this record, the motion fails at the threshold.

When Defendant knowingly uploaded videos using COVER's copyrighted characters to YouTube, he knew he was distributing infringing works in the United States. Likewise, when COVER submitted copyright takedown notices to YouTube referencing COVER's United States copyright registrations for each character infringed, Defendant doubled down on his willful infringement by submitting counter notifications disputing

the takedowns. In doing so, Defendant affirmatively consented to personal jurisdiction in this Court under 17 U.S.C. § 512(g)(3)(D) and invoked the counter-notification mechanisms of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512 permits a service provider to keep material down only if the claimant files suit, this required COVER to sue in this district, where YouTube is headquartered.

While the parties may both be Japanese, shared nationality does not decide a forum non conveniens motion; the balance of conveniences does, and it favors retention. The claims arise exclusively under United States law, on United States copyright registrations, for distribution on a United States platform. The single most important custodian of proof is a non-party, Google LLC, which operates YouTube, is headquartered in this District, and is subject to compulsory process only here. Notably, Defendant concedes that this Court's familiarity with the governing law favors retention.

Furthermore, Defendant raised this motion after several months of litigation, the arduous procedure of Hague Convention service, an Answer, a motion to strike, and an Amended Answer. Dismissal would not merely relocate this dispute; rather, under § 512(g)(2)(C) it would return the accused videos to YouTube and strip COVER of the statutory remedies for which it registered its works. As discussed below, Defendant has not made the "clear showing" that the doctrine of forum non conveniens demands on either prong, and the Motion should be denied.

## II. RELEVANT BACKGROUND

### A. COVER's Business and Intellectual Property Rights

Plaintiff COVER is a Japanese entertainment company founded in 2016 and headquartered in Tokyo. Kaneko Decl., ¶ 2. However, COVER also has a presence in the United States by virtue of its wholly owned North American subsidiary COVER USA, Inc., which is a California corporation located in Glendale, California. *Id*.

In 2017, Plaintiff launched its hololive production division ("Hololive") to support online streamers who use virtual avatars ("VTubers") to perform and interact with fans.

*Id.*, ¶ 3. The VTuber industry is a fast growing entertainment sector, and through Hololive, Plaintiff helps VTubers establish, maintain, and monetize their online presences, including by facilitating the coordination of events and collaborations. *Id.*

COVER has been steadily growing its engagement within the U.S. market in recent years, particularly in California. *Id.*, ¶ 4. For example, COVER had a significant VTuber livestream event with the Los Angeles Dodgers on July 5, 2025, and a VTuber concert at Radio City Music Hall in New York on August 23-24, 2025. *Id.*

COVER owns all the intellectual property rights, including copyright rights, to the avatar characters used by the VTubers. *Id.*, ¶¶ 6-8. Given the growing importance of the U.S. market to COVER's business operations, COVER has registered over 100 of these avatar characters with the U.S. Copyright Office. *Id.* These registrations include the specific avatar characters in this action. Examples of some of the COVER Characters are depicted below. *Id.*



Amane Kanata



Momosuzu Nene



Tokoyami Towa

*Id.* The COVER Characters have achieved global fame and popularity and constitute valuable intellectual property and a significant source of revenue for Plaintiff. *Id.*

**B. Defendant's Willful Copyright Infringement on YouTube**

In early January 2026, Plaintiff discovered that Defendant had uploaded video content that infringes the COVER Characters onto his YouTube channel called

@V_Virgin_Mary, which has thousands of subscribers. *Id.*, ¶¶ 8-10. More specifically, Plaintiff discovered that Defendant had uploaded at least 68 different infringing videos that reproduced, and/or contained derivative works of, the COVER Characters. *Id.* These infringing videos specifically identified the COVER Characters by name, making it clear that Defendant's infringement was intentional and willful. *Id.*; *see also* ECF No. 1-2.[1] An example of one of the infringing videos on Defendant's YouTube channel is depicted below.




Kaneko Decl., ¶¶ 8-10. As shown in the screenshot above, Defendant has both referenced Plaintiff's copyrighted avatar character by name, Amane Kanata, and reproduced

[1] Defendant's Motion disputes certain counts and character names in that exhibit. See ECF No. 20 at 8–9 & Ex. B. Those are merits questions that are not properly resolved on a forum non conveniens motion, which does not reach the merits. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425, 429–32 (2007). They do, however, confirm that this case will be resolved by reference to YouTube's own records — removal notices, counter-notice submissions, reinstatement notifications, and per-video view and revenue data — which are held by a non-party headquartered in this District. See Section IV.C.3, infra.

Plaintiff's copyrighted character in the video. *Id*. These are willful, intentional acts of infringement.

### C. Defendant Invoked this Court's Jurisdiction by Filing YouTube Counter Notifications

Before filing this lawsuit, Plaintiff COVER attempted to address the infringing videos directly with YouTube, submitting 68 copyright violation claims (i.e., takedown notices). *Id*., ¶¶ 11-12. While some of the videos were taken down, either by Defendant or YouTube, in response to the initial takedown notices, Defendant began submitting counter notifications in response to other takedown notices. *Id*. Defendant admits this in his Motion. *See* ECF No 20-1, ¶ 8; ECF No. 20, at 2:9, 15:18-20. Each counter notification included the statement required by 17 U.S.C. § 512 (g)(3)(D) consenting to the jurisdiction of the federal district court in which the service provider is located and agreeing to accept service of process from the complaining party. *Id*.

Because Defendant submitted counter notifications denying infringement, Google/YouTube required proof of legal action in order for the infringing content to remain removed. Accordingly, by filing counter notifications, Defendant forced Plaintiff to file this lawsuit for copyright infringement in this District. See 17 U.S.C. § 512(g)(2)(C) (service provider must restore material within ten to fourteen business days unless it first receives notice that the claimant "has filed an action seeking a court order to restrain the subscriber from engaging in infringing activity relating to the material on the service provider's system or network"). Therefore, Defendant should not be permitted to dismiss this lawsuit created by his own actions.

## III. LEGAL STANDARD

When a moving party seeks to transfer a case to another federal district, forum non conveniens has been replaced by 28 U.S.C. § 1404(a). But where the moving party's proposed alternative forum is a foreign country, federal courts apply the common law doctrine of forum non conveniens. The main distinction is that, under forum non

conveniens, the court's discretion is limited to staying or dismissing the action because it cannot transfer the action to a foreign country. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253-54 (1981).

In this regard, this Court and the Ninth Circuit have cautioned that forum non conveniens is an "exceptional tool to be employed sparingly." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000); *Cordova v. Huneault*, 2026 U.S. Dist. LEXIS 87017, *2-3 (N.D. Cal. Apr. 20, 2026) (quoting same). Indeed, a defendant moving to dismiss on the ground of forum non conveniens must make "a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to the plaintiff's inconvenience …" *Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1206 (9th Cir. 2009) (citation omitted); *Cordova*, 2026 U.S. Dist. LEXIS 87017, at *3. In other words, the defendant faces a heavy burden of proof. *Id*.

## IV. ARGUMENT

When bringing a motion to dismiss for forum non conveniens, the moving party must establish (1) the availability of an adequate alternative forum, and (2) that the balance of private and public interest factors favor dismissal. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142–43 (9th Cir. 2001); *Cordova*, 2026 U.S. Dist. LEXIS 87017, at *3–4. If the moving party does not establish both of these prongs, the Motion must be denied. *Id*. Because forum non conveniens is a drastic remedy to be used sparingly, a defendant bears a heavy burden on both prongs. *Carijano v. Occidental Petroleum Corp.,* 643 F.3d 1216, 1224 (9th Cir. 2011). As discussed below, Defendant has not met his heavy burden on either prong.

### A. COVER's Choice of Forum Is Entitled to Deference

As an initial matter, before addressing the two elements required for an adequate alternative forum, it is well-established that a plaintiff presumptively may choose its forum and that a plaintiff's choice of forum is entitled to deference. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981). While admittedly a foreign plaintiff's choice of forum is

entitled to less deference than a U.S. plaintiff, even a foreign plaintiff's choice of forum is entitled to some deference. *Id*. The Ninth Circuit has cautioned that the reduced deference afforded foreign plaintiffs is not a mechanical discount but a reflection of the underlying inquiry: whether the plaintiff's choice of forum is convenient with a substantial relation to the action as opposed to the product of forum shopping for example. *Boston Telecomms.,* 588 F.3d at 1207 & n.3; *Ravelo Monegro*, 211 F.3d at 513–14.

Applied here, the inquiry resolves itself. COVER did not select this District for tactical advantage. This action was filed here because Defendant submitted counter notifications designating this District and consenting to jurisdiction in it. That is precisely the reasoning of *Cordova*, where this Court held that "there is no indication that Mr. Cordova has engaged in forum shopping; rather, he filed suit in this District because defendants submitted DMCA counter-notices in which they expressly consented to jurisdiction in this District." 2026 U.S. Dist. LEXIS 87017, at *8–9. Nothing in that reasoning turns on the plaintiff's nationality. A foreign copyright owner who follows the statutory path a foreign infringer chose for it has not shopped for a forum; it has accepted one.

COVER's connections to this forum independently support deference. COVER conducts business in the United States through its wholly owned California subsidiary, COVER USA, Inc.; it holds more than 100 United States copyright registrations, including those asserted here; and the United States accounts for approximately one-quarter of all overseas viewership of COVER's content. Kaneko Decl., ¶¶ 2, 5-6. COVER does not contend that its subsidiary's residence makes COVER a domestic plaintiff. It contends that these facts, together with Defendant's own designation of this District, show that COVER's choice reflects genuine convenience.

Therefore, COVER respectfully submits that, as a starting point, this Court should accord deference to its choice of forum.

### B. Defendant Has Not Established That Japan Is an Available and Adequate Alternative Forum

The first requirement for a forum non conveniens dismissal is that an adequate alternative forum is available to the plaintiff. *Cordova*, 2026 U.S. Dist LEXIS 87017, at *4. An alternative forum is adequate if (1) the defendant is amenable to process there, and (2) the other jurisdiction offers a satisfactory remedy. *Id*. Defendant has not met his heavy burden on the first requirement, requiring denial of his Motion.

#### 1. Defendant Has Not Established That He Is Amenable to Service of Process in Japan

With regard to the first requirement that the defendant is amenable to process in the alternative forum, Plaintiff COVER submits that Defendant has failed to establish amenability to service of process. In this regard, when a defendant does not explicitly establish or assert or affirm that it is subject to service in the alternative forum, the requirement has not been met. *Cordova*, 2026 U.S. Dist. LEXIS 87017, at *5 ("defendants have not addressed the 'threshold test' of whether they are amenable to service of process"); *see also City of Almaty v. Khrapunov*, 685 F. App'x 634, 635 & n.1 (9th Cir. 2017) (holding it was abuse of discretion for district court to find an adequate alternative forum where "[d]efendants failed to establish amenability to service of process").

In this case, while Defendant notes that both parties are Japanese, Defendant does not explicitly state that he is amenable to service in Japan or that he has explicitly agreed to accept service of process in Japan. At best, Defendant dances around the requirement, implying but not explicitly confirming that he is amenable to process in Japan. Defendant in fact concedes the gap. Rather than make the showing, he asks the Court for "an opportunity to address such a condition rather than denial of the motion solely on that basis." ECF No. 20, at 11:8-9. That is a request to be relieved of his burden, not satisfaction of it. Nor does Defendant identify the Japanese court by name, district, or jurisdictional basis in which this dispute would proceed. It is not the Court's job in the

context of a motion to dismiss on forum non conveniens grounds to make assumptions on the defendant's behalf. Accordingly, Defendant has failed to carry his burden of proof as to the first requirement that he is amenable to process in Japan. Therefore, Defendant's Motion should be denied.

**2. Defendant Has Not Established That Japan Offers a Satisfactory Remedy for Infringement of United States Copyrights on a United States Platform**

COVER does not suggest that Japanese courts are generally inadequate, or that Japan lacks remedies for infringement of Japanese copyrights. The question, however, is not whether Japan offers a remedy in the abstract. It is whether Defendant has carried his burden of showing that Japan offers a satisfactory remedy for this dispute, namely, infringement of works registered with the United States Copyright Office, distributed on a United States platform, through a United States statutory notice-and-takedown scheme. On that question Defendant has submitted no evidence at all—no declaration of Japanese law, no expert, no authority beyond two bare citations to articles 112 and 114 of the Japan Copyright Act.

That silence is dispositive under the authorities Defendant himself invokes. In *Creative Technology, Ltd. v. Aztech Systems Pte., Ltd.*, 61 F.3d 696, 701 (9th Cir. 1995), the Ninth Circuit found Singapore adequate in part because the record established that "the High Court of Singapore would be free to apply United States copyright law." Defendant offers nothing comparable. He does not represent that a Japanese court would entertain a claim under the United States Copyright Act, or that Japanese law reaches infringement occurring outside Japan. Where the movant makes no such showing, the foreign forum is not shown to be adequate. *See Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*, 816 F.3d 1366, 1372 (Fed. Cir. 2016) (alternative forum inadequate where the movant offered no evidence that the infringing acts occurred there and made no showing that the foreign copyright statute "provides a remedy for extraterritorial infringement"); *Future*

*Roots, Inc. v. YEAR0001 AB*, 2024 U.S. Dist. LEXIS 211552, *15 (C.D. Cal. Nov. 20, 2024) ("[d]istrict courts routinely find alternative foreign forums inadequate when U.S. intellectual property rights form the crux of the dispute").

Defendant's reliance on *Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764 (9th Cir. 1991), is inapposite. Defendant describes *Lockman* as "a dispute substantially involving copyright issues." ECF No. 20, at 14:25-26. It was not. Lockman was a trademark case, and the Ninth Circuit affirmed dismissal notwithstanding the plaintiff's inability to press its RICO and Lanham Act claims in Japan precisely because its contract and tort claims (the substance of that dispute) remained fully available there. *Id*. at 768–69; *see Cordova*, 2026 U.S. Dist. LEXIS 87017, at *5–6 (so describing Lockman). Here, by contrast, the federal copyright claim is not one claim among several. It is the whole case.

Finally, COVER registered these works with the United States Copyright Office for a reason. In the United States, registration is the statutory precondition to the election of statutory damages and to a fee award. 17 U.S.C. §§ 411, 504(c), 505. This is not the case in Japan, as the registration of copyrights is not a precondition for the election of statutory damages and to a fee award in copyright infringement cases. Ohki Decl., ¶¶ 6-7. Furthermore, there is no legal mechanism to pursue statutory damages for copyright infringement of US copyrights that would otherwise be awarded in US federal courts. *Id*. COVER does not contend that this difference alone renders Japan inadequate. But it does mean that Defendant cannot satisfy his burden by pointing to articles 112 and 114 alone; he must show that the remedies actually available in his proposed forum are satisfactory for the claims actually pleaded, and he has satisfied this burden.

### C. The Balance of Private and Public Interest Factors Favors Retention

#### 1. The Private Interest Factors Do Not Support Dismissal

In assessing the private interest, federal courts consider the following factors: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants;

(3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious, and inexpensive. Cordova, 2026 U.S. Dist LEXIS 87017, at *7; *Boston Telecomms*., 588 F.3d at 1206–07.

Factor 1: Residence of the Parties and Witnesses. With regard to the first factor, while both parties admittedly reside in Japan, this forum is not inconvenient for either. With regard to Plaintiff, Plaintiff has a strong connection to the United States. Plaintiff has a presence in the United States through its wholly owned California-based U.S. subsidiary, COVER USA. Kaneko Decl., ¶¶ 2-6. In addition, COVER is active within the U.S. market, particularly in California. *Id*. For example, COVER had a significant VTuber livestream event with the Los Angeles Dodgers on July 5, 2025, and a VTuber concert at Radio City Music Hall in New York on August 23-24, 2025. *Id*. In fact, in terms of viewership of COVER's content, the United States accounts for approximately one-quarter of all overseas viewership. *Id*.

Moreover, with regard to Defendant, it is disingenuous for Defendant to knowingly and explicitly consent to personal jurisdiction in this forum and then proceed to argue that this forum is inconvenient on forum non conveniens grounds. *Epic Games, Inc. v. Mendes*, 2018 U.S. Dist. LEXIS 98719, *11-12 (N.D. Cal. June 12, 2018) (foreign defendant consented to jurisdiction in the Northern District of California by submitting a DMCA counter notification expressly consenting to the jurisdiction of the federal court where YouTube is located); *Seedevice Inc. v. Korean Broadcasting System*, 2025 U.S. Dist. LEXIS 97388, *14 (C.D. Cal. Mar. 21, 2025) (a defendant cannot use a forum as both a "sword and shield" in objecting based on forum non conveniens). As such, Defendant should not be heard to complain that this forum is inconvenient after explicitly consenting to this forum in order to submit a counter notification and continue his infringing activities.

It is also worth noting that, to date, this forum has not been inconvenient to Defendant. Defendant has filed numerous documents in English with this Court through the ECF filing system without problem. This includes an Answer, Amended Answer, Motion to Dismiss, Motion for Leave, and an Opposition to a Motion to Strike. ECF Nos. 19-23.

Other than the parties themselves, the only significant witness will be YouTube, which is located in this District. Critical information resides in the possession of YouTube. This information includes archival copies of the infringing videos, the takedown notices, the counter notifications, the number of views on each infringing video, and the amount of revenue generated by each infringing video. This evidence is essential to demonstrate Plaintiff's damages, as well as to showing that Defendant's use was commercial in nature, not fair use as he claims. If this case is dismissed and Plaintiff is forced to re-file the case in Japan, Japan's court system does not provide a procedure to subpoena foreign non-parties for evidence and compel the production thereof. Ohki Decl., ¶¶ 4-5; *see, e.g., Sandisk Corp. v. SK Hynix, Inc.*, 2015 Cal. Super. LEXIS 296, *35 (Super. Ct. Cal. June 30, 2015) ("In Japan, the only basis for compelling attendance of an unwilling witness is the threat of fines and/or detention that appears to never be implemented in practice.").

Given that this is a case driven primarily by electronic evidence, the overriding consideration should be the location of YouTube, the primary non-party witness. Because the claims in this case turn on videos, platform data, and DMCA submissions, discovery will proceed largely through electronically stored information and Plaintiff is amenable to remote depositions if preferred by Defendant, all of which will obviate any meaningful burden associated with travel. On this record, the first factor does not support dismissal.

<u>Factor 2: Forum's Convenience to Litigants</u>. The Northern District of California is a convenient forum for both litigants. In this regard, COVER incorporates its arguments regarding convenience set forth under Factor 1 above. Briefly reiterating, with regard to Plaintiff COVER, California is a convenient forum, as COVER has a wholly-owned

California-based subsidiary, COVER USA. In addition, COVER has already retained and is represented by U.S. counsel, who is located in this forum. It is also COVER's preference and more sensical for COVER to have its U.S. copyright claims relating to U.S. copyright registrations adjudicated by this forum, which is familiar with U.S. copyright law. With regard to Defendant Yamashita, again, he should not be able to use this forum as sword and a shield by now asserting this forum is inconvenient after explicitly consenting to personal jurisdiction here. Defendant has effortlessly filed court documents through this forum's ECF filing system without incident. Moreover, this forum generally provides for the ability to hold court hearings and ADR proceedings virtually by video conference, which is also convenient for Defendant. Finally, the discovery procedures and laws of this forum make it especially convenient to the litigants. In this regard, the parties will need to subpoena evidence and potential testimony from non-party YouTube, which can be conveniently accomplished via the discovery rules in this forum but will not be able to be accomplished if this case is litigated in Japan. Ohki Decl., ¶¶ 4-5.

In his Motion, Defendant argues that this factor favors dismissal because he was in Japan when he uploaded the infringing videos. *See* ECF No. 20, at 11:19-20. However, contrary to Defendant's assertion, copyright infringement occurs where the infringing videos are distributed, downloaded, accessed, and/or viewed. Defendant's infringing videos were distributed, downloaded, accessed, and viewed by YouTube users in the United States, which means that Defendant committed copyright infringement in the United States, infringing COVER's copyrighted works that have been registered with the U.S. Copyright Office. As such, this forum is the more appropriate forum to adjudicate a U.S. copyright infringement claim.

<u>Factor 3: Access to Physical Evidence and Proof</u>. In cases involving copyright infringement on YouTube, the Northern District of California has held that the "access of proof factor weighs against dismissal as YouTube may be a material non-party and it is subject to compulsory process in this District." *Cordova*, 2026 U.S. Dist LEXIS 87017, at

*12. Like *Cordova*, this case involves Defendant's infringement of Plaintiff's copyrighted works on the YouTube platform. Therefore, this factor weighs against dismissal and in favor of retention of this action.

Defendant's own Motion confirms the point. He devotes several pages to asserted discrepancies in COVER's exhibit, such as whether 68 videos or 56 were at issue, whether 20 characters or 16, and how particular character and personal names are transliterated. ECF No. 20 at 4-5. Those contentions are merits questions, and a forum non conveniens motion does not reach the merits. *Sinochem*, 549 U.S. at 425, 429–32. But they are also a concession on this factor. Every one of those questions will be answered by records in the custody of Google LLC: the removal requests COVER submitted, the counter notifications Defendant submitted, YouTube's reinstatement notifications, the channel's upload history, and per-video view and monetization data. Defendant has framed a case that cannot be tried without evidence held by a non-party that is subject to compulsory process in this District. That is the definition of a factor weighing against dismissal.

In his Motion, Defendant argues that this factor favors dismissal because the infringing videos are in Japanese and will need to be translated. *See* ECF No. 20, at 12. However, California federal courts clearly hold that translations are not a meaningful consideration in this analysis and do not impose an appreciable burden. *Via Techs., Inc. v. Asus Computer Int'l*, 2015 U.S. Dist. LEXIS 80124, *24 (N.D. Cal. June 18, 2015) (rejecting translation as a factor because "courts in the United States deal with such issues regularly"); *Riot Games, Inc. v. Suga PTE, Ltd.*, 2023 U.S. Dist. LEXIS 190228, *45-46 (C.D. Cal. Sept. 14, 2023) (translation costs insufficient to dismiss for forum non conveniens); *CYBERsitter, LLC v. People's Republic of China*, 2010 U.S. Dist. LEXIS 128345, *26 (C.D. Cal. Nov. 18, 2010) (translation not an issue where both courts would need to do some translation).

In addition, Plaintiff COVER notes that its U.S. copyright registrations cover visual works, not textual works. As such, for purposes of assessing infringement, the

Court and jury would be visually comparing COVER'S copyrighted characters to the infringing characters in Defendant's videos, not assessing the Japanese audio content. In any event, as the cases cited above make clear, translation is a non-factor.

Factor 4: Whether Unwilling Witnesses Can Be Compelled to Testify. The threshold question under this factor is not whether witnesses lie beyond the reach of compulsory process, but whether the movant has alleged or shown that any witness would be unwilling to testify. *Carijano*, 643 F.3d at 1231; *Boston Telecomms.,* 588 F.3d at 1209–10. Defendant has identified no witness at all — not by name, not by subject matter, and not as unwilling. He expressly declines to do so. That alone defeats his showing on this factor. The relevant contrast is nonetheless instructive. Importantly, because YouTube is located in this District, this Court can compel YouTube to provide documents and testimony through nonparty subpoenas and can compel YouTube to appear to testify at trial. In contrast, if this case is dismissed and is instead filed in Japan, Japan will *not* have the power to compel a United States non-party to provide documents and testimony. Ohki Decl., ¶¶ 4-5; *see, e.g., Sandisk.*, 2015 Cal. Super. LEXIS 296, at *35. This would severely prejudice Plaintiff COVER, as critical evidence is in the possession of YouTube, including archival copies of the infringing videos, the takedown notices, the counter notifications, the number of views on each infringing video, and the amount of revenue generated by each infringing video.

Other than nonparty YouTube, the remaining witnesses are the parties themselves. With regard to Plaintiff COVER, as the plaintiff, it is more than willing to appear to testify and to produce any of its employees or management for testimony. Kaneko Decl., ¶13. COVER anticipates offering testimony from its own personnel regarding ownership, registration, and damages, and it will produce those witnesses in this District at its own expense. *Id.* With regard to Defendant, because Defendant is a party, he is a willing witness and can be compelled to appear (or his failure to appear will result in judgment against him).

Conspicuously, in his Motion, Defendant has not identified any "unwilling witnesses." To the contrary, other than YouTube, this case does not require any third-party witnesses—just the Plaintiff and Defendant. Accordingly, this factor weighs against dismissal and in favor of retention of the case.

Factor 5: The Cost of Bringing Witnesses to Trial. This factor relating to the cost of bringing witnesses to trial is largely tied to the location of witnesses with material information regarding a plaintiff's claims. *See, e.g., Kleiner v. Spinal Kinetics, Inc.*, 2016 U.S. Dist. LEXIS 52492, *10 (N.D. Cal. Apr. 19, 2016). Here, the witnesses with material information regarding Plaintiff COVER's copyright claim are YouTube and Plaintiff. If this case is dismissed and re-filed in Japan, the cost of bringing YouTube witnesses will be enormous, if they can even be compelled to attend trial in Japan in the first place. In fact, with regard to YouTube, a Japanese court will not be able to compel YouTube's attendance at trial. Ohki Decl., ¶¶ 4-5

In his Motion, when addressing this factor, Defendant does not actually address the cost of bringing witnesses to trial but instead focuses on the "transportation of documents," which is not the focus of this factor. *See* ECF No. 20, at 13:4-16. In fact, confusingly, Defendant states the transportation of documents should not receive weight because this case involves electronic and digital evidence. *Id*. All of this is irrelevant to this fifth factor. By not addressing the cost of bringing witnesses to trial, Defendant has failed to address this factor at all and has not met his burden with regard to this factor. Accordingly, this factor weighs against dismissal and in favor of retention of the case.

Factor 6: Enforceability of the Judgment. With regard to the sixth factor, "U.S. judgments … generally are enforced in Japan." Yasuhiro Fujita, Enforcing Judgments in Japan, Los Angeles Lawyer, Dec. 2004, at 22 (available at 27-DEC LALAW 19). Notably, Defendant did not address this factor in his Motion. Accordingly, this factor weighs against dismissal and in favor of retention of this action.

Factor 7: Other Practical Problems. When a case has been pending for a significant amount of time, this Court has noted that dismissing based on forum non conveniens "would require [the plaintiff] to initiate an entirely new action in a different forum," which would not "promote the 'easy, expeditious and inexpensive' resolution of the dispute." *Cordova*, 2026 U.S. Dist. LEXIS 87017, at *15. Notably, Defendant did not address this factor in his Motion. Here, Plaintiff COVER filed this lawsuit on February 5, 2026—over seven months ago. *See* ECF No. 1. Moreover, Plaintiff went through the time and expense of serving Defendant through the Hague Convention. *See* ECF No. 16, at ¶ 1. Furthermore, Defendant has already filed an Answer, which Plaintiff moved to strike, resulting in Defendant filing an Amended Answer. *See* ECF Nos. 17-19. As such, Defendant delayed bring his Motion to Dismiss until after he had filed an Answer and Amended Answer, resulting in the pleadings being set and the case being at issue. As in *Cordova*, requiring Plaintiff COVER Corporation to initiate an entirely new lawsuit in a different forum after this case has been pending for several months and after the filing of pleadings and motions in this case would not promote the easy, expeditious, and inexpensive resolution of this dispute. Therefore, this factor weighs against dismissal.

Dismissal would also inflict two concrete harms that ordinary forum non conveniens dismissals do not. First, dismissal would restore the accused videos. Section 512(g)(2)(C) permits a service provider to keep challenged material down only where the claimant has "filed an action seeking a court order to restrain" the infringing activity. If this action is dismissed, that predicate disappears, the videos return to the platform, and the statutory process COVER followed is nullified. Second, dismissal creates limitations exposure. A plaintiff sent to a new forum after months of litigation may "lose out completely" through the running of a limitations period. *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 66 n.8 (2013); see Cordova, 2026 U.S. Dist. LEXIS 87017, at *15 (relying on the same footnote). Defendant addresses neither consequence.

In his Motion, Defendant argues that, under this factor, the Court should take into consideration that he is a native Japanese speaker. *See* ECF No. 20, at 13:18-27. However, the record nonetheless shows that Defendant has participated in this English-language proceeding effectively. He invoked an English-language United States statutory process to obtain reinstatement of his videos, and he has filed an Answer, Amended Answer, Motion to Dismiss, Motion for Leave, and an Opposition to a Motion to Strike. ECF Nos. 19-23. It appears that Defendant understands English just fine. Moreover, as noted by the cases cited under the third factor above, translation issues are not sufficient for forum non conveniens dismissals. Defendant even concedes this point. ECF No. 20, at 13:23.

Accordingly, this factor weighs against dismissal and in favor of retention of this case.

***

As analyzed above, each of the seven private interest factors weigh in favor of this Court retaining this case rather than dismissing it.

**2. The Public Interest Factors Favor Retention**

In assessing the public interest, federal courts consider the following factors: (1) the local interest of the lawsuit, (2) the court's familiarity with governing law, (3) burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to the forum. *Cordova*, 2026 U.S. Dist LEXIS 87017, at *15-18; *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001). As discussed below, each of the factors favors retaining this action in the Northern District of California.

<u>Factor 1: Local Interest of the Lawsuit</u>. This factor strongly favors this forum. The United States has a substantial interest in adjudicating disputes arising under its federal statutes governing online conduct, including the Copyright Act, the DMCA, and 17 U.S.C. § 1201. The United States and this forum also have a substantial interest in adjudicating copyright disputes on YouTube. That interest is particularly strong here because the alleged conduct occurred on a U.S.-based platform and through a U.S. statutory scheme.

This is not a foreign-centered dispute with incidental U.S. contacts it arises directly from conduct directed at and occurring within the United States. In fact, Defendant acknowledges this interest in his Motion: "Defendant does not contend that the American interest is nonexistent." *See* ECF No. 20, at 14:12. Accordingly, this factor weighs against dismissal and in favor of retention of this case.

Factor 2: Court's Familiarity with Governing Law. This factor also strongly favors retaining the case. Plaintiff's claims arise exclusively under U.S. federal law, including the Copyright Act and its DMCA provisions in § 512. This Court is uniquely suited to interpret and apply this statute. Indeed, this Court has recognized that "California federal courts are well accustomed to interpretation of" United States copyright law, and that this factor therefore weighs against dismissal. *Cordova*, 2026 U.S. Dist. LEXIS 87017, at *16 (citing *Cadence Design Sys., Inc. v. Yunjing Intel. Innovation (Shenzhen)* Co., No. 25-cv-00317-AMO, 2026 WL 751167, at *9 (N.D. Cal. Mar. 17, 2026)). By contrast, dismissal would require a foreign court to interpret and apply U.S. copyright law or risk misapplication of complex statutory and doctrinal frameworks developed by U.S. courts. *See, e.g., Future Roots, Inc. v. YEAR0001 AB*, 2024 U.S. Dist. LEXIS 211552, *15 (C.D. Cal. Nov. 20, 2024) ("'[d]istrict courts routinely find alternative foreign forums inadequate when U.S. intellectual property rights form the crux of the dispute'"). Notably, in his Motion, Defendant concedes that this factor weighs against dismissal: "This Court is naturally more familiar with the law than a Japanese court, and Defendant acknowledges that this consideration favors retention…" *See* ECF No. 20, at 14:20-21. Accordingly, this factor weighs heavily against dismissal and in favor of retention.

Factor 3: Burden on Local Courts and Juries. This Court has repeatedly held that standard copyright cases impose no additional burden on the court or jury in the Northern District of California. *Cordova*, 2026 U.S. Dist LEXIS 87017, at *17. In his Motion, Defendant only argues that translation will impose a burden, but translation is routinely rejected as trivial. *Via Techs., Inc. v. Asus Computer Int'l*, 2015 U.S. Dist. LEXIS 80124,

*24 (N.D. Cal. June 18, 2015) (rejecting translation as a factor because "courts in the United States deal with such issues regularly"); *Riot Games, Inc. v. Suga PTE, Ltd.*, 2023 U.S. Dist. LEXIS 190228, *45-46 (C.D. Cal. Sept. 14, 2023) (translation costs insufficient to dismiss for forum non conveniens); *CYBERsitter, LLC v. People's Republic of China*, 2010 U.S. Dist. LEXIS 128345, *26 (C.D. Cal. Nov. 18, 2010) (translation not an issue where both courts would need to do some translation). Therefore, because this Court routinely holds that this factor weighs against dismissal, this factor weighs in favor of retention of this action. *Cordova*, 2026 U.S. Dist LEXIS 87017, at *17.

Factor 4: Congestion in the Court. As with the third factor, this Court repeatedly holds that there is no problem of court congestion in the Northern District of California. *Id.*; *Eventbrite, Inc. v. Loranger*, 2019 U.S. Dist. LEXIS 237127, at *14 (N.D. Cal. Nov. 19, 2019). In his Motion, Defendant simply concludes without any legal or factual analysis that this factor is neutral, failing to carry his burden of proof on this factor. In contrast, because this Court repeatedly finds congestion is not an issue and routinely holds that this factor weighs against dismissal, this factor weighs in favor of retention of this action. *Id*.

Factor 5: Costs of Resolving a Dispute Unrelated to the Forum. With regard to the fifth factor, Defendant did not address this factor in his Motion. As such, there is no evidence in the record that the cost to the parties of litigating in the Northern District of California are any greater than the costs of litigating in Japan. Moreover, in this case, the dispute is not unrelated to the Northern District of California—as YouTube is located in this forum. To the contrary, it arises directly from conduct occurring on a U.S.-based platform and through a U.S. statutory framework. The claims are governed exclusively by federal law, and the alleged infringement, DMCA counter-notifications, and related conduct are all tied to YouTube and its operations in the United States and in this District in particular. Adjudicating this dispute in this District does not impose the costs of

resolving a foreign controversy on a local forum. Rather, it reflects the appropriate allocation of judicial resources to a dispute with substantial domestic connections.

***

As analyzed above, each of the five public interest factors weighs against dismissal and in favor this Court retaining this case. Given that this case involves the U.S.-based platform YouTube and U.S. copyright law and the DMCA, it naturally follows that the public interest factors would weigh in favor of this Court adjudicating this lawsuit.

## V. CONCLUSION

For all the foregoing reasons, COVER Corporation respectfully requests that the Court deny Defendant's Motion to Dismiss on Forum Non Conveniens Grounds. Defendant has not established that Japan is an available and adequate alternative forum, and he has not established that the private and public interest factors clearly point toward dismissal.

Dated: September 18, 2026

Respectfully submitted,

GAMMA LAW, P.C.

By *\/s/ Bruno Tarabichi*

Bruno Tarabichi
Attorneys for Plaintiff
COVER Corporation